IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARMEN MENDEZ,

       Plaintiff,

v.                                                                    No. 2:22-cv-00121-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Carmen Mendez's Notice of Motion and Motion to Reverse

or Remand Administrative Agency Decision.  [Doc. 20].  Pursuant to 28 U.S.C. § 636(c) and

Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Judge Jerry H. Ritter

resolving Mendez's challenge to the Commissioner's final decision on her application for

Disability Insurance Benefits ("DIB") and entering final judgment in this appeal.  [Docs. 1, 4, 9,

10].[1]  Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court

denies Mendez's motion and affirms the Administration's final decision.

## I.   INTRODUCTION

This case is about two things.  The first is how federal courts should read and interpret

remand orders issued by the Social Security Administration's Appeals Council.  Plaintiff

presents a specific portion of such a remand order which, read in isolation, suggests that the

Administrative Law Judge ("ALJ") below should have reconsidered far more evidence than he

did.  Defendant, meanwhile, points to explanatory language elsewhere in the order which, read

together with Plaintiff's favored portion, suggests the remand order had a much narrower

---

[1] Documents 4, 9, and 10 are text-only docket entries viewable on the CM/ECF system.

meaning.  The second thing this case is about is how the Administration should consider evidence when determining a claimant's ability to work.  Plaintiff argues that the Administration's ALJ erred in multiple ways that caused him to give too much weight to evidence suggesting that Plaintiff's mental impairments had little to no effect on her ability to work.  Defendant argues that the ALJ did not err and was entitled to assign weight to the evidence in the way he did.  If Plaintiff is correct on either of these points, her case could be remanded for reconsideration of her benefits application.

The Court resolves both points in the Administration's favor.  Remand orders from the Appeals Council include explanations and reasoning, much the same as a typical judicial opinion.  To give these orders a reasonable reading, they must be read in their entirety, and the complete text of the remand order in this case reveals a meaning much narrower than Mendez argues for.  Her arguments on the second point fail as well because the ALJ below clearly considered all relevant evidence, as was required of him, and supported his findings with enough evidence that the findings must be deemed conclusive.  For these reasons, as explained in greater depth below, the Court affirms the Administration's decision to deny benefits.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Carmen Mendez applied for DIB under Title II of the Social Security Act in June 2015, claiming she became disabled in December 2009.  *AR* at 433.[2]  The Administration denied Mendez's application initially in July 2015 and again on reconsideration in December that year.  *AR* at 158, 179.  Mendez then asked to be heard by an ALJ.  *AR* at 252–53.  Mendez would ultimately be heard by three ALJs, each of whom denied her application and each of

---

[2] Document 17 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

whose denials she appealed.  *See AR* at 119–157 (hearing before ALJ Michael Leppala); 70–118

(hearing before ALJ Donald Willy); 34–69 (hearing before ALJ Stephen Gontis).

     a.   <u>Medical Background</u>

     Mendez suffers both physical and mental impairments.  In her initial application, Mendez

stated she could not work due to fibromyalgia, arthritis, muscle spasms, diabetes, and

osteoporosis.  *AR* at 494.  ALJ Gontis later found that Mendez's impairments also included

degenerative disc disease in her spine, degenerative joint disease, morbid obesity, hallux valgus

deformity, and heel spurs.  *AR* at 17–18.  Mendez stated she was being treated for depression, for

which she was prescribed trazadone and bupropion.  *AR* at 505, 508, 675.  According to Mendez

and her daughter-in-law, these conditions made it difficult for Mendez to perform various tasks,

such as lifting her arms and sitting or standing for long, and affected Mendez's memory and

concentration.  *AR* at 514, 519.

     Mendez's mental ailments are long-standing.  Medical records show that Mendez has

been diagnosed with depression and prescribed medication to treat it since at least November

2008.  *See AR* at 674–75 (depression diagnosis); *see also AR* at 682–83, 688–89, 695, 715–16,

728–29, 738, 748, 775, 784, 813, 827, 852, 933 (prescription orders for antidepressants from

2008 through 2014).  Records also reflect treatment for anxiety between 2009 and 2011.  *See AR*

at 683, 688, 694, 715–16, 814, 817 (prescription orders for alprazolam to treat anxiety).  Dr.

Carmen Cosme, M.D., Mendez's primary care provider, noted in 2008 that Mendez had a

"[history] of depression after losing a daughter" and that Mendez cried easily.  *AR* at 672–73.

Mendez also reported that she twice experienced suicidal ideation – once in childhood, and again

after her daughter died, causing Mendez to attempt suicide.  *AR* at 666.  She also said she

sometimes hallucinated.  *AR* at 667.  That said, medical records also consistently state that

Mendez managed her depression well from 2009 to 2014.  *See AR* at 680, 694, 703, 714, 736, 746, 774, 781–82, 868, 911, 919 (medical records noting that Mendez "Denie[d] Depression or mood swings" or that depression was "well controlled").

State agency psychological experts uniformly agreed that Mendez's mental impairments either were not severe or only slightly impeded her ability to work.  Consultative examiner Dr. Kay E. Ennis, Ph.D., opined in 2011[3] that "Mendez can [likely] understand, remember basic instructions, concentrate and persist at tasks of basic work" and could probably "interact with the general public and/or co-workers appropriately and have flexibility to adapt to changes in the workplace."  *AR* at 667.  In August 2015, non-examining expert Dr. Cathy Simutis, Ph.D., reviewed Mendez's initial benefits application and noted that Mendez suffered from a mood disorder and bereavement, but found "[n]o evidence of severe limitations" caused by her mental impairments.  *AR* at 162–63.  On reconsideration, Dr. Maryanne Bongionvani, Ph.D., agreed.  *AR* at 173.  Another non-examining psychological expert, Dr. Lillie McCain, Ph.D., was questioned during Mendez's 2020 hearing and opined that Mendez's depression did not meaningfully limit her ability to work.  *AR* at 104.  Dr. McCain supported her position with an analysis of Mendez's medical records, noting that, although records suggested Mendez experienced depression and insomnia, there was "no evidence to support that there ha[d] been consistent psychotherapeutic intervention," no "psychological testing . . . to validate any clinical depression," and Mendez "denie[d] depression and mood swings."  *AR* at 103.

One of Mendez's treating physicians, however, disagreed.  Dr. Christopher Butler, M.D., provided treating source statements in 2017 and 2021.  *See AR* at 1669–674, 2749–756.  Dr.

---

[3] Though Mendez's present application was filed in 2015, records suggest that she also sought disability benefits from the State of New Mexico before filing her pending application.  *See AR* at 160 (listing applications filed in 2011 and 2013).

Butler's 2017 statement focused on Mendez's psychological conditions. *See AR* at 1669.  He opined that Mendez was markedly limited in her ability to understand, remember, or apply information; mildly limited in her ability to interact with others; markedly limited in her ability to concentrate, persist, or maintain pace; and mildly limited in her ability to adapt or manage herself, and gave short reasons for each of these opinions. *AR* at 1671–72.  Dr. Butler further opined that, among other things, Mendez could not concentrate on work for more than fifteen minutes at a time, nor interact appropriately with the general public, co-workers, or supervisors, and she would be off-task for more than a quarter of a typical workday. *AR* at 1672–73.  Dr. Butler's 2021 statement focused on Mendez's physical conditions but maintained that Mendez would be off-task more than a quarter of a typical workday and that she would miss more than four days of work each month due to her impairments. *AR* at 2749.

> b. <u>Relevant Administrative Proceedings</u>

After her second benefits denial, the Appeals Council remanded again. *See AR* at 233–35.  In its order, the Council stated that "[u]pon remand the Administrative Law Judge will . . . [g]ive further consideration to the claimant's impairments within the sequential evaluation process, particularly at step 2, in accordance with 20 CFR 404.1520." *AR* at 234.[4]  The Appeals Council explained its order:

> Further consideration at step 2 of the sequential evaluation is necessary.  The Administrative Law Judge finds that through the date last insured, the claimant had a severe impairment of status-post right ankle surgery [citing *AR* at 212].  However, the only evidence discussed in the decision relating to an ankle impairment regards an injury sustained on January 20, 2015 [citing *AR* at 219].  The claimant last met the insured status requirements of the Social Security Act on December 31, 2014 [citing *AR* at 211, 226, 457].  It is therefore unclear what evidence was relied upon to find that the claimant had a severe ankle impairment through the date last insured. This needs to be clarified upon remand.

---

[4] The Appeals Council also ordered that further consideration be given to "treating, non-treating, and non-examining source opinions" in compliance with 20 C.F.R. § 404.1527. *AR* at 234.  Mendez does not challenge ALJ Gontis's compliance with this part of the order, so the Court does not consider it. *See* [Doc. 20-1, p. 1].

*AR* at 234.  Upon remand, the case was assigned to ALJ Gontis, who held a hearing on July 9,

2021, and denied benefits.  *AR* at 12, 34.  Mendez appealed to the Council again, which denied

review and made ALJ Gontis's decision final.[5]  *AR* at 1–3.  Mendez timely appealed to this Court

and the parties consented to my presiding.  *See* [Docs. 1, 4, 9, 10].  Mendez then moved for the

Administration's decision be reversed.  [Doc. 20].  Parties completed briefing on December 30,

2022.  *See* [Docs. 19, 20, 22].

## III.    THE COMMISSIONER'S FINAL DECISION

DIB applicants must make several showings to receive benefits.  Applicants must first

show that they were or are insured for disability.  *See* 42 U.S.C. § 423(a)(1)(A) (requiring that

individuals be "insured for disability insurance benefits"); 20 C.F.R. § 404.315(a)(1).  Applicants

are insured for a finite period corresponding to quarters of coverage they have accrued.  *See* 42

U.S.C. § 423(c)(1) (defining months in which an individual is insured for DIB); 20 C.F.R.

§ 404.316 (defining when entitlement to DIB begins and ends).  DIB applicants must have also

been "disabled," as that term is defined in the Social Security Act, while they were insured for

disability.  *See* 42 U.S.C § 423(a)(1)(E).  "Disabled" means an inability to engage in substantial

gainful activity due to a medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

not less than twelve months.[6]  *Id.* at § 423(d)(1)(A).  ALJs within the Social Security

Administration thus determine DIB eligibility by first determining when the applicant was

---

[5] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration
before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the
Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough
for a district court to review.  20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir.
2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the
Commissioner's final decision for purposes of review").

[6] There is a second definition of "disability" for blind people fifty-five years old or older.  *See* 42 U.S.C.
§ 423(d)(1)(B).  Mendez does not allege she is or was blind, so the Court omits the second definition.

insured, then by applying a five-step sequential analysis to determine whether the claimant was disabled while insured.[7]  *See* 20 C.F.R. §§ 404.110; 404.1520(a)(4).

ALJ Gontis applied this procedure in his decision.  He first determined that Mendez last met the insured status requirements for DIB on December 31, 2014.  *AR* at 17.  Then, at step one of the five-step analysis, he found that Mendez did not engage in substantial gainful activity from her alleged disability onset date of December 1, 2009, through her date last insured.  *Id.*  At step two, ALJ Gontis found that Mendez was severely impaired by "degenerative disc disease of the lumbar spine; degenerative joint disease of the bilateral shoulders; morbid obesity; fibromyalgia; hallux valgus deformity; and heel spurs[.]"  *AR* at 17–18.  Evaluating Mendez's mental impairments, ALJ Gontis acknowledged that Mendez's depression was a "medically determinable impairment" but found that it "did not cause more than minimal limitation" to Mendez's ability to work and was therefore not severe.  *AR* at 18.  ALJ Gontis further noted that Mendez broke her ankle in 2015 but this was not a severe impairment for purposes of her application because it happened after her date last insured.  *AR* at 19.  At step three, ALJ Gontis found that Mendez's impairments did not, individually or in combination, meet or medically equal an impairment in the listings.[8]  *Id.*

ALJ Gontis then determined Mendez's "residual functional capacity," which is the most that a person can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  ALJ Gontis found that Mendez could perform light work, as defined at 20 C.F.R. § 404.1567(b), except

> she can lift, carry, push, or pull no more than 20 pounds occasionally and 10 pounds frequently.  She is limited to no more than 6 hours sitting and 6 hours standing or walking in an 8-hour workday.  In addition, she is limited to frequent, rather than constant, reaching in all directions bilaterally.  She can occasionally climb ramps

---

[7] The steps in the analysis are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).
[8] "The listings" refers to impairments enumerated at 20 C.F.R. pt. 404, subpt. P, App'x. 1.  An individual whose impairments satisfy the duration requirement at 42 U.S.C. § 423(d)(1)(A) and which meet or equal an impairment listed in Appendix 1 is disabled regardless of age, education, or work experience.  20 C.F.R. § 404.1520(d).

and stairs, can never climb ladders, ropes, or scaffolds, can frequently balance, and can occasionally stoop, kneel, crouch, and crawl.   She can never work at unprotected heights or with dangerous moving mechanical parts.

*AR* at 20.  ALJ Gontis supported his findings by discussing, among other things, evidence touching on Mendez's mental impairments.  Significant weight was given to the opinions of Drs. Simutis, Bongionvani, and McCain, all of whom opined that Mendez's mental impairments were not severe.  *AR* at 22.  ALJ Gontis stated the opinions were persuasive because they were "consistent with the medical evidence prior to the date last insured and well-explained," then cited evidence to support his view.  *Id.*  Less weight was given to consultative examiner Dr. Ennis's opinion because her use of the term "basic work" was "somewhat vague, and the opinion does not say whether [Mendez] can do more than basic work."  *AR* at 23.  Finally, little to no weight was given to Dr. Butler's opinions "as they [were written] well after the date last insured, not well explained, and not consistent with the objective medical records prior to the date last insured."  *Id.*  ALJ Gontis cited evidence to support this view as well and pointed out that Mendez "had little mental health treatment prior the date last insured."  *Id.*  Finally, ALJ Gontis discussed the opinion of Mendez's daughter-in-law, Jermica, but gave it little weight because he found the opinion inconsistent with pre-2015 medical records and because Jermica lacked medical training.  *AR* at 24.

At step four, ALJ Gontis found that Mendez was not disabled from December 2009 through 2014.  *AR* at 26.  Relying on a vocational expert, ALJ Gontis determined that Mendez had past relevant work as an office manager and an accounting clerk.  *AR* at 24.  Mendez's residual functional capacity, he found, would have allowed her to perform either of those jobs and therefore she was not disabled.  *AR* at 25.  ALJ Gontis also found that Mendez could have performed other substantially gainful work which existed in significant numbers in the national

economy and thus was not disabled under the step-five analysis either.  *AR* at 25–26.  Mendez

was thus denied benefits.

## IV.    STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence and whether the correct legal standards were

applied."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739

F.3d 569, 571 (10th Cir. 2014)).  A deficiency in either area is grounds for remand.  *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The Commissioner's findings are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,

requiring more than a scintilla but less than a preponderance.  *See id.*; *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007).  A decision is not based on substantial evidence, however, if it is

overwhelmed by other record evidence.  *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th

Cir. 2014).

## V.    ISSUES PRESENTED

(a) Whether ALJ Gontis followed the Appeals Council's second remand order?

(b) Whether ALJ Gontis properly considered evidence of Mendez's mental impairments

in support of his residual functional capacity findings?

## VI.    ANALYSIS

Mendez argues that ALJ Gontis erred at two points in the sequential analysis:  first, at

step two by violating the Appeals Council's order that he reconsider evidence as it related to

whether some of Mendez's health issues produced severe impairments; and second, in his

residual functional capacity analysis by supporting his findings with an erroneous discussion of the medical evidence.  The Court finds no reversible error at either step.

   a.   Compliance with the Appeals Council's Order

       i.  *Parties' Arguments*

Mendez's argument is straightforward.  In its second remand order, the Appeals Council ordered ALJ Gontis to reconsider "the claimant's impairments within the sequential evaluation process, particularly at step 2[.]"  [Doc. 20-1, p. 6] (quoting *AR* at 234).  Mendez argues that ALJ Gontis failed to do this because his discussion about Mendez's mental impairments at step two was the same as the discussion in the prior decision.  [Doc. 20-1, pp. 6–7].  This, she says, violated the Council's order, so ALJ Gontis's decision ought to be reversed and remanded.

The Administration seems to agree that an ALJ would err if the Appeals Council ordered him to reconsider all impairments at a specific step and the ALJ wholly ignored the order.  *See* [Doc. 22, p. 6].  The problem, they argue, is that this did not happen.  Rather, the Administration says that the Council's order, as it pertained to step two, merely required ALJ Gontis to give "further consideration of whether [Mendez]'s right ankle injury was a severe medically determinable impairment[.]"  *Id.* at 5–6 (citing *AR* at 233–34).  The order to reconsider impairments at step two was thus limited only to reconsideration of physical, not mental, impairment evidence and ALJ Gontis followed it precisely.  Therefore, says the Administration, ALJ Gontis's decision not to reassess the severity of Mendez's mental impairments was no error.

       ii.  *Relevant Law*

The Appeals Council's remand orders have consequences.  When the Council remands a case, ALJs "shall take any action that is ordered by the Appeals Council and may take any additional action . . . not inconsistent with the Appeals Council's remand order."  20 C.F.R.

§ 404.977(b).  On appeal from the Administration's final decision denying benefits, federal courts can consider whether ALJs complied with a remand order from the Council and an ALJ's failure to comply can be reversible error.  *See Noreja v. Comm'r, S.S.A.*, 952 F.3d 1172, 1177–78 (10th Cir. 2020).  When considering whether an ALJ's decision violated the Council's remand order, the Court should carefully consider the order's language.  *Id.* at 1181.

       iii.  *Application*

The consequence of the Appeal's Council's last order in this case, however, is not reversal.  The Council ordered ALJ Gontis to "[g]ive further consideration to the claimant's impairments within the sequential evaluation process, particularly at step 2[.]"  *AR* at 234.  In isolation, readers may interpret this sentence as a sweeping command to reconsider the severity of all of Mendez's impairments, to effectively re-do the entire step-two analysis from scratch. But, in a paragraph immediately above that sentence, the Council explained its command.  *See id.*  As discussed above, the Council stated that the problem with the prior ALJ's step-two analysis was that a physical impairment, "status-post right ankle surgery," was deemed severe even though it was caused by Mendez breaking her ankle, which happened after her date last insured.  *See id.*  Read in context, then, the Council's order to reconsider Mendez's impairments at step two was limited to reconsidering the severity of a specific physical condition and did not reach her mental impairments.  In his decision, ALJ Gontis addressed this problem by finding that Mendez's broken ankle "was not a medically determinable impairment prior to the date last insured" and thus was not a severe impairment for purposes of her benefits application.  *AR* at 19. Mendez's reading of the Council's order would have this Court put one sentence under a microscope and ignore the rest.  This reading does not reflect the kind of careful consideration

required by the Tenth Circuit in *Noreja*, so the Court rejects it.  The Administration's decision cannot be reversed on this ground.

      b.  <u>Mental Impairment Evidence and the Residual Functional Capacity</u>

        i.  *Parties' Arguments*

According to Mendez, ALJ Gontis's residual functional capacity findings are propped up by erroneous reasoning which requires reversal and remand.  *See* [Doc. 20-1, pp. 7–11].  She describes several errors.  First, Mendez claims that ALJ Gontis's discussion about mental impairments only acknowledged evidence supporting a finding that Mendez's mental impairments were not limiting and ignored contrary evidence.  *See id.* at 8–11.  Second, she asserts that ALJ Gontis gave too much weight to Mendez's relative lack of mental health treatment prior to the date last insured.  *Id.* at 10.  Third, Mendez says these flaws "resulted in a decision which lacks adequate explanation for the ALJ's findings" and thus there is a logical gap between the evidence presented and the residual functional capacity found.  *Id.* at 11.  Mendez's arguments also imply that ALJ Gontis may have erred by relying on his severity findings at step two of the analysis to substitute for proper residual functional capacity findings at step four.  *See id.* at 7–11.  Decisions so flawed, says Mendez, cannot survive judicial review.

In response, the Administration argues that its residual functional capacity findings were supported by substantial evidence and that Mendez is asking the court to reweigh that evidence.  *See* [Doc. 22, pp. 3–5].  To rebut Mendez's discrete arguments, the Administration cites sections of ALJ Gontis's decision to show that ALJ Gontis considered the totality of the evidence, favorable and unfavorable, to support his decision.  *See id.* at 7–10.  Rather than being fatally flawed, the Administration claims its decision was coherent and well-supported, requiring affirmance.

ii.  *Relevant Law*

ALJs must consider the effects of mental impairments on a claimant's ability to work twice in a typical DIB application decision.  First, ALJs must consider them at step two by applying the psychiatric review technique to determine whether a claimant's mental impairments are severe.  *See* 20 C.F.R. § 404.1520a(a).  Then, at step four, ALJs must determine the claimant's residual functional capacity.  *Id.* at § 404.1520(a)(4)(iv).  Although ALJs consider much of the same evidence at steps two and four, the findings are not the same and ALJs cannot use the psychiatric review technique as a substitute for mental residual functional capacity findings.  *See* Social Security Ruling ("SSR") 96-8p at *The Psychiatric Review Technique*; *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) (applying SSR 96-8p's rule distinguishing step-two and step-four findings).[9]

A claimant's residual functional capacity is the most she can do despite her limitations and must be explained by the ALJ.  20 C.F.R. § 404.1545(a)(1); SSR 96-8p at *Definition of RFC*.  The ALJ's findings must be based on all relevant evidence.  20 C.F.R. § 404.1545(a)(3).  This includes opinion evidence, which the ALJ must weigh according to, among other things, the relationship between the claimant and the medical expert, how well the opinion is supported, and its consistency with the record.  *Id.* at § 404.1527(c).[10]  A corollary to this rule is that ALJs cannot support their residual functional capacity findings by "cherry-picking" evidence, i.e., relying solely on evidence which supports a finding of non-disability while excluding or ignoring

---

[9] All SSRs can be accessed free of charge at https://www.ssa.gov/OP_Home/rulings/rulings.html.  Pin citations to SSRs refer to headings in the SSR because the Administration does not paginate its rulings.

[10] Mendez applied for DIB before March 27, 2017.  *See AR* at 433.  DIB applications filed after that date are partly governed by the rules at 20 C.F.R. § 404.1520c, which lacks the "treating physician rule."  *Compare* 20 C.F.R. §§ 404.1520c(a) ("We will not defer . . . to any medical opinion(s) . . . including those from your medical sources"), *and* 404.1527(c) (generally giving greater weight to examining and treating sources).  Mendez, however, does not argue that ALJ Gontis gave too much or too little weight to medical experts based on whether they examined or treated Mendez.  *See* [Doc. 20-1, pp. 7–12].  Arguments on that ground are thus waived.

contrary evidence.  *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008).  On the other hand, if the ALJ considers all relevant evidence and supports his findings at step four with more than a scintilla of evidence, his findings are conclusive.  42 U.S.C. § 405(g).

   iii.  *Application*

  ALJ Gontis's decision below did not violate any of the applicable rules on how to determine a claimant's residual functional capacity and his findings were supported by substantial evidence.  The Court thus cannot reverse the Administration's decision on this ground, either.

  Nothing in ALJ Gontis's decision suggests he used his step-two severity findings to replace a proper residual functional capacity analysis.  In his discussion to support his residual functional capacity findings, ALJ Gontis acknowledged the non-severity of Mendez's mental impairments and noted that several psychological experts agreed with that assessment.  *AR* at 22–23.  But these acknowledgements were brief and overshadowed by thorough discussions of the opinion evidence.  For each psychological expert's opinion which mentioned non-severity, ALJ Gontis cited specific exhibits which were consistent with or supported those conclusions. *See AR* at 22–23.  Severity alone was clearly not the subject of ALJ Gontis's mental residual functional capacity findings.

  Nor did ALJ Gontis "cherry-pick" evidence to support his conclusions.  Dr. Butler's opinions were the only evidence in the record suggesting that Mendez's ability to work was meaningfully impaired by her mental health issues, and he was the only expert whose opinion, if adopted, would have added limitations to Mendez's residual functional capacity based on mental impairments.  Both of his opinions were discussed, including his suggested limitations.  *AR* at

23.   ALJ Gontis contrasted Dr. Butler's opinions with other evidence and found that they were inconsistent with and unsupported by the record as a whole.  *Id.*  ALJ Gontis thus gave the opinions little weight and supported that finding with substantial evidence.

The only pieces of evidence Mendez points to as supportive of her position, and which were not expressly discussed, are records showing Mendez was diagnosed with and prescribed medication to treat depression and anxiety.  [Doc. 20-1, p. 9] (citing *AR* at 728, 730, 817).  But these records show only that Mendez had medically determinable mental impairments, which ALJ Gontis acknowledged.  *See AR* at 18.  The residual functional capacity assessment is meant to determine a claimant's "*ability* to do sustained work *activities*" and "must include a discussion of the individual's *abilities* on that basis."  SSR 96-8p at *Definition of RFC* (emphasis added).  Psychiatric diagnoses and prescriptions, unconnected to attributable behaviors or symptoms, do not automatically correspond to an inability to perform activities.  *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. text rev.), 29 (". . . because impairments, abilities, and disabilities vary widely within each diagnostic category . . . assignment of a particular diagnosis does not imply a specific level of risk, impairment, or disability").  Thus, Mendez's depression and anxiety diagnoses and associated prescriptions, on their own, do not show that her ability to work was limited.  The claimant bears the burden to connect her impairments to restrictions on her ability to work, and Dr. Butler's opinions were the only evidence to do this.  *See* 20 C.F.R. § 404.1545(a)(3).  ALJ Gontis addressed these views, analyzed them in light of the other evidence, and weighed them accordingly, and thus did not err.

Mendez's objection to ALJ Gontis considering how much mental health treatment she received is misplaced.  She might be correct that ALJs can err by considering the amount of

mental health treatment a claimant received – but only at step two.[11]  *See Grotendorst v. Astrue*, 370 F. App'x. 879, 883 (10th Cir. 2010) (unpublished) (noting that "the amount of treatment received by a claimant does not play a role" in determining the severity of a medically determinable impairment at step two).  ALJ Gontis, however, considered Mendez's relative lack of mental health treatment at step four while evaluating her residual functional capacity.  *AR* at 22–24.  The scope of the residual functional capacity analysis is far broader than that of the psychiatric review technique, requiring the ALJ to consider "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  Indeed, the Administration has found that ALJs ought to consider the "longitudinal record of any treatment" in determining the effects of symptoms on a claimant's ability to work, and this Court has blessed the use of such evidence in this way.  *See* SSR 16-3p at *Medical Sources*; *Hollander v. Berryhill*, 1:17-cv-00090-LF, 2018 WL 3360761 at *9 (D.N.M. July 10, 2018) (unpublished).  ALJ Gontis's decision to consider Mendez's lack of mental health treatment thus was not error.

Based on all of this, the Court cannot find that ALJ Gontis's decision "did not follow the required legal procedure," nor that any error "resulted in a decision which lacks adequate explanation for the ALJ's findings."  [Doc. 20-1, p. 11].  To the contrary, the analysis above illustrates that no reversible errors were made and that ALJ Gontis more than adequately explained his decision.  Discrete findings throughout the decision are linked to specific evidence.  The evidence for each finding is more than a scintilla and Mendez has not shown it to be overwhelmed by contrary evidence, so the findings are conclusive.  The Administration's final decision must therefore be affirmed.

---

[11] And even if ALJ Gontis had erred this way at step two, it would have been harmless.  Generally, if an ALJ finds that the claimant has at least one medically determinable severe impairment, error at step two is harmless because benefits are not denied at step two unless the claimant has no severe impairments.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

## VII.    <u>CONCLUSION AND ORDER</u>

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Carmen Mendez's Motion to

Reverse and Remand, [Doc. 20], is **DENIED** and the Commissioner's Final Decision in this case

is **AFFIRMED.**

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent